# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUFUS COOK, <br><br> Plaintiff, <br><br> v. <br><br> H.S.B.C. BANK USA, N.A., as trustee for the Registered holders of Renaissance Equity Loan Asset— Backed Certificates, series 2007-3, RANDALL S. MILLER & ASSOCIATES, LLC, POTESTIVO ASSOCIATES, P.C., KIMBERLY J. GOODELL, and GREENBERG TRAURIG, LLP <br><br> Defendants. | No. 17-CV-00059 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

After protracted state court litigation in which HSBC Bank attempted (and is still attempting, by all accounts) to foreclose on his property, Rufus Cook filed suit against HSBC, its attorneys, and the state court judge. Cook alleges that throughout the course of the foreclosure proceeding the defendants violated his rights under the Illinois and federal constitutions, the Illinois Consumer Fraud Act, and the Fair Debt Collection Practices Act. This Court previously dismissed Cook's claims against the state court judge. The remaining defendants now move to dismiss.

## I. BACKGROUND[1]

On June 23, 2007, Rufus Cook entered into a mortgage agreement and promissory note ("the note") with Delta Funding Corporation for a property located at 951 East Hyde Park

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

Boulevard in Chicago ("the property"). Compl. Ex. 4, ECF No. 1. Shortly thereafter, on August 1, 2007, Delta entered into a pooling and servicing agreement with, among others, Renaissance Mortgage Acceptance Corp., as depositor, and HSBC Bank USA, NA, as trustee. As part of the agreement, Cook's loan was pooled with other loans and assigned to HSBC as trustee for the new noteholders. Compl. ¶ 2, Ex. 1. In November 2011, HSBC filed a foreclosure action against Cook in the Circuit Court of Cook County, Illinois, alleging that Cook defaulted on the note. Compl. Ex. 4. HSBC attached the note to the complaint, but the note did not contain an endorsement indicating that it had been transferred from Delta to HSBC. *Id*. Nonetheless, the complaint listed HSBC as the current mortgagee and owner of the indebtedness. *Id*.

HSBC unsuccessfully attempted to serve the foreclosure complaint on Cook at the property, although the loan's servicer (not HSBC) for years had communicated with Cook via mail sent to his office, rather than to the property. Compl. ¶ 13. HSBC, represented by Randall S. Miller and Associates, convinced the judge presiding over the foreclosure action to permit service by publication, submitting an affidavit indicating that Cook was outside the state or in hiding. *Id*. HSBC subsequently obtained a default judgment against Cook permitting sale of the property. *Id*. Cook, however, learned of the impending sale and successfully moved to vacate the default judgment. *Id*. HSBC proceeded to properly serve Cook at his office. *Id*. ¶ 14.

Cook filed a motion to dismiss the foreclosure action on May 2, 2014, asserting that HSBC lacked standing to foreclose on the property because the note did not contain an endorsement. Compl. Ex. 6. Cook did not notice the motion for presentment. HSBC did nothing until September 2015, when, now represented by Kimberly J. Goodell of Potestivo Associates, PC, it filed a second motion for default judgment. Compl. Ex. 10. The motion argued that Cook failed to respond to the complaint, and that his motion to dismiss was neither noticed for

presentment nor timely. *Id*. Instead of attempting to serve the motion for default judgment on Cook at his office, which was Cook's address of record in the case, HSBC sent notice of the motion to an address unknown to Cook. Compl. ¶ 16. Without notice to Cook, the second motion for default judgment was granted in November 2015, and a sale was scheduled for February 4, 2016. *Id*. ¶ 22. In January 2016, Cook learned of the impending sale from a stranger, and he successfully moved to vacate the second default judgment. *Id*. ¶ 28.

In April 2016, Cook filed an amended motion to dismiss and noticed it for presentment, again asserting that HSBC lacked standing to foreclose on the property. *Id*. ¶ 29. On the day the motion was to be presented, the judge announced that she had already denied the motion with prejudice, on the ground that the absence of standing must be asserted as an affirmative defense rather than in a motion to dismiss. *Id*. ¶ 30. The court granted Cook leave to file a response to the complaint and any affirmative defenses. Compl. Ex. 13. Cook availed himself of that opportunity, but also filed a counterclaim against HSBC, Goodell, Randall S. Miller, and the Miller and Potestivo law firms alleging a conspiracy to defraud and violation of Cook's constitutional rights. Compl. Ex. 14. The court struck Cook's counterclaim, noting the age of the case and that it had only granted him leave to file an answer and affirmative defenses. Compl. Ex. 15-16. The court did, however, tell Cook that he was free to file a motion for leave to file his counterclaim. Compl. Ex. 16.

In August 2016, HSBC's new counsel, Greenberg Traurig, wrote to Cook suggesting resolution of the foreclosure. Compl. ¶ 41. Cook responded by demanding that HSBC prove, within five days, that it had the right to foreclose on the property. *Id*. Counsel from Greenberg Traurig then sent Cook the mortgage, the unendorsed note, and the pooling and servicing agreement and indicated that HSBC believed these documents gave HSBC standing to foreclose.

Compl. Ex. 18. Cook responded to the Greenberg counsel's e-mail, explaining why he believed the attached documents did not grant HSBC standing to foreclose. Counsel replied:

> In response to your letter, we believe you are mistaken about the facts and law surrounding this case. The documents produced show HSBC Bank is the proper plaintiff in this matter. Among other things, the Pooling Service Agreement states that in connection with the transfer of mortgage, the seller is delivering the original mortgage note as well. Also, the Note specifically states that the lender may transfer the note and that anyone who takes transfer of the note is the note holder.

Compl. Ex. 20. Counsel appeared to be referencing the first paragraph of the note, which states: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Compl. Ex. 4.

Cook also filed a motion to vacate the court's decision to deny his motion to dismiss and strike his counterclaim. HSBC, represented by Greenberg Traurig, responded to that motion by arguing, among other things, that the motion was untimely because it came more than 30 days after the rulings and that Cook's proposed motion to dismiss was substantively meritless. Compl. Ex. 21. The court eventually denied Cook's motion to vacate. Compl. Ex. 22. About three weeks later, on January 4, 2017, Cook filed the instant suit against HSBC, Goodell, the Miller, Potestivo, and Greenberg Traurig law firms, and the state court judge, Pamela McLean Meyerson. The complaint alleges that the defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, and the Illinois Consumer Fraud Act, 815 ILCS 505/2 et seq., as well as Cook's due process and equal protection rights under the Illinois and federal constitutions. The court previously dismissed the claims against Judge Meyerson. ECF No. 34. The remaining defendants now move to dismiss the complaint.

## II. DISCUSSION

### A. Standing

Multiple defendants argue that Cook lacks standing to pursue this suit. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (internal quotation marks omitted). Defendants maintain that Cook has suffered no injury in fact because he remains in possession of the property (as yet the state court has entered no judgment against Cook).[2]

Defendants are incorrect. It is true enough that "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). "Otherwise the limitation of federal jurisdiction to cases and controversies would be empty." *Crabill v. Trans*

---

[2] In support of that proposition, defendants cite two unpublished district court cases that they say suggest that costs associated with litigation cannot confer standing on a plaintiff. *See Bass v. Blitt and Gaines, P.C.*, No. 16-cv-6874, 2016 WL 6877729, at *3 (N.D. Ill. Nov. 22, 2016); *Merill Companies, LLC v. Keybank Nat. Ass'n*, No. CV 09-3317, 2010 WL 144363, at *1 (C.D. Cal. Jan. 7, 2010). Neither case is helpful for the defendants. In *Bass*, the court did not rule that litigation costs cannot support standing; it held that the specific litigation costs at issue in that case could not support standing because the costs would have arisen with or without the defendant's allegedly illegal conduct. *Bass*, 2016 WL 6877729, at *3. So too in *Merill*, where the court determined that the underlying state court action would not have been affected by the defendant's allegedly unlawful conduct. In any event, *Merill*'s conclusion that "litigation expenses alone do not establish standing" appears to be based on a misreading of the Ninth Circuit's decision in *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002), where the court offhandedly referenced decisions indicating that an organizational plaintiff does not gain standing by incurring costs associated with bringing suit.

*Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001). But that is not what is happening here. Cook's claim for damages at this juncture appears to be based exclusively on litigation expenses, but they are not expenses he incurred as "the byproduct" of *this* lawsuit; they are the expenses he has incurred as a result of having to defend against the foreclosure claim asserted by the defendants in the state court. Cook is not, therefore, manufacturing standing by imposing litigation expenses upon himself by filing this suit; he is seeking to recover the expenses he has incurred as a result of the defendants' allegedly unlawful conduct. *See* Compl. ¶ 54 ("By disobeying the law . . . [defendants] act to exhaust Cook's resources by engaging him in further costly litigation[.]"). Viewed in that light, there is no question that those expenses constitute an (alleged) injury sufficient to confer standing. *Cf. Hays v. City of Urbana*, 104 F.3d 102, 103 (7th Cir. 1997) ("Costs of compliance necessary to avoid prosecution can constitute [injury in fact].").

### B. Section 1983 Counts

The defendants are on firmer ground in arguing that Cook's federal due process and equal protection counts, brought under 42 U.S.C. § 1983, must be dismissed because Cook has not alleged any state action on their part. To state a cause of action under § 1983, a plaintiff "must allege that the person who has deprived him of [his constitutional] right[s] acted under color of state law." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "In order to be characterized as state action, the deprivation of constitutional rights must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . and the party charged with the deprivation must be a person who may fairly be said to be a State actor." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). "Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of

constitutional rights, where the state compels the discriminatory action . . . or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself." *Id*. at 815-16. Cook contends that the defendants are state actors because they obtained favorable rulings from a state court. But it is axiomatic that simply filing a lawsuit and obtaining favorable rulings from a judge does not convert private parties into state actors. *See Fries v. Helsper*, 146 F.3d 452, 457-58 ("'[M]erely being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'" (alteration omitted)) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). To the extent Cook suggests that the defendants formed some sort of conspiracy with the state court judge that rendered them state actors, the complaint contains no facts in support of that proposition. Consequently, Cook's § 1983 counts are dismissed with prejudice.

    **C.**    **FDCPA Claims**

The defendants offer a smorgasbord of reasons the court should dismiss Cook's Fair Debt Collection Practices Act counts. Under the FDCPA, it is unlawful for a "debt collector" to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. As an initial matter, a number of defendants posit that Cook has not alleged the existence of a "debt" as that term is defined in the FDCPA: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5). The defendants maintain that Cook has not indicated that he makes personal or household use of the property. Indeed, the Seventh Circuit has recognized that a mortgage loan securing an investment property (*i.e.*, a property that the owner rents out) "financ[es] a business" and therefore is not a consumer debt

covered by the FDCPA. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872, 874 (7th Cir. 2000).

Cook has pled no information concerning his use of the property when he obtained the mortgage in 2007. Instead, Cook points to a portion of the mortgage that reads:

> Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Compl. Ex. 4. But this contractual language does not describe how Cook used or intended to use the property when he took out the mortgage, information uniquely available to Cook. The language in fact provides for the possibility that Cook rented the property or otherwise used it as an investment, noting that the lender could not unreasonably deny Cook permission to use the property in such a fashion. Moreover, a tax record provided by a defendant indicates that the property has a multi-family use and that Cook did not claim a homeowner tax exemption for the property for at least 2011-2015, the years listed on the record. Cook County Assessor's Office Record, ECF No. 28-1.[3] And Cook has alleged that attempts to serve him at the property were improper, Compl. ¶ 13, further suggesting that he does not use the property as a residence, as Illinois law permits service as an individual's usual place of abode. 735 ILCS 5/2-202. In the absence of any allegations from Cook concerning his use of the property at the time he took out the mortgage, the court must conclude that he has failed to plausibly allege an FDCPA "debt."

---

[3] The court may take judicial notice of public records in ruling on a motion to dismiss. *See White v. Keely*, 814 F.3d 883, 885 n. 2 (7th Cir. 2016).

Because there can be no FDCPA violation in the absence of a debt, the court could dismiss all of Cook's FDCPA counts without prejudice on that ground alone. But Cook's FDCPA counts bear further discussion because many of them are legally untenable and cannot be cured by repleading. First, one of Cook's FDCPA claims (Count 13 in the complaint) concerns HSBC's (allegedly false) assertion in the foreclosure complaint that it is "the legal holder of the indebtedness." Compl. ¶ 81. The FDCPA has a one year statute of limitations. 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."). The foreclosure complaint was filed in November 2011, yet Cook did not file this suit until January 2017. Cook maintains that the defendants fraudulently concealed their scheme, but even if the discovery rule applies to FDCPA claims (Cook cites no authority for that proposition, *but see Cada v. Baxter Healthcare Corp*., 920 F.2d 446, 450 (7th Cir. 1990) (discovery rule assumed to apply to federal statutory claims in absence of contrary suggestion by Congress)), Cook's complaint leaves no doubt that Cook actually discovered the alleged deception by May 2014: in that month, he filed a motion to dismiss the foreclosure action on the ground that the note was unendorsed and that HSBC was not the proper holder of the debt. Compl. Ex. 6. Count 13 is therefore barred by the statute of limitations and is dismissed with prejudice. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

Cook's next eight FDCPA counts concern various representations made by HSBC and its attorneys during the state court litigation, including the representations that: Cook could not be served because he either left the state or was in hiding (Count 14); HSBC properly notified Cook of the second motion for default judgment (Count 15); Cook failed to timely respond to the foreclosure complaint (Count 16); Cook's motion to dismiss was invalid because it was not noticed for presentment (Count 17); Cook's motion to vacate certain court rulings was untimely (Count 18); Cook's motion to dismiss was untimely (Count 19); and Cook waived objections to the foreclosure complaint (Count 21). Count 20 does not identify any purportedly false representations; it instead chastises HSBC and its attorneys for failing to respond to certain arguments made in Cook's motion to vacate and for arguing issues not properly before the court. Each of these representations (or non-representations, as it were) was made to the state court in association with a motion or a response to a motion in which a party was asking the state court for relief.

This is problematic for Cook. "When read in light of the [FDCPA's] purpose and numerous provisions, the [Act's] prohibitions are clearly limited to communications directed to the consumer and do not apply to state judges." *O'Rourke v. Palisades Acquisition XVI*, LLC, 635 F.3d 938, 942 (7th Cir. 2011). In *O'Rourke*, the Seventh Circuit considered a misleading exhibit attached to a state court debt collection complaint. Although the exhibit was designed to trick a judge into entering a default judgment against a debtor, and although the debtor was served the exhibit, the court concluded that the debtor could not sustain a cause of action under the FDCPA because the exhibit was directed at the judge and not the debtor. Cook's allegations are indistinguishable. He asserts that HSBC and its attorneys made an assortment of false factual representations and legal arguments to the court to obtain a default judgment and to block

Cook's motions to dismiss and vacate. Like the *O'Rourke* exhibit, these representations are not actionable under the FDCPA because they were made to a state court judge for the purpose of obtaining or preventing relief.

Cook points to *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811-13 (7th Cir. 2016), for the proposition that the FDCPA extends to misrepresentations made in litigation. True, but unhelpful for Cook: these FDCPA counts fail not because they were made in court papers, but because they were allegedly designed to dupe a state court judge into making rulings favorable to HSBC, rather than being directed at Cook. In *Marquez*, the misleading allegation at issue noted: "Pursuant to 11 U.S.C. § 1692g(a), **Defendants are informed** that the undersigned law firm is acting on behalf of Plaintiff to collect the debt and that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof." *Id*. at 810 (emphasis added). The Seventh Circuit determined that this language, which sought to inform a debtor of his obligations, was actionable under the FDCPA because it did so in misleading fashion. *Id*. at 814-15. None of the representations identified by Cook, by contrast, sought to inform **Cook**, or deceive him, about anything. Because the statements at issue were made for the purpose of persuading a judge and were not directed to Cook, this case is governed by *O'Rourke,* not *Marquez*. Counts 14-21 of the complaint are therefore dismissed with prejudice.[4]

That leaves Counts 22 and 23, which concern the 2016 e-mails between Cook and Greenberg Traurig, acting on HSBC's behalf.[5] As to these emails, Greenberg maintains that they

---

[4] The defendants also maintain that these counts are time-barred, but it is not necessary to address that argument in view of this ruling.

[5] Count 24 of the complaint appears to be based on the foreclosure complaint and the 2016 Greenberg Traurig e-mails, and is therefore duplicative of Counts 13, 22 and 23. As

11

were not material and the complaint fails to allege how they would have misled a "reasonable unsophisticated consumer."[6] That is unpersuasive; these were communications from attorneys intended to convince Cook that his legal claims had no merit; as such, they plainly were material. And while the Court agrees with Greenberg that Cook has likely failed to plead that the two defendants named in these counts, Greenberg Traurig and HSBC, are "debt collectors" covered by the FDCPA in this instance,[7] that deficiency is not necessarily incurable in an amended pleading. Consequently, Cook's FDCPA claims are dismissed with prejudice as to all alleged representations except the 2016 Greenberg Traurig e-mails. Cook's FDCPA counts concerning the 2016 Greenberg Traurig e-mails are dismissed without prejudice.[8]

Because the complaint fails to allege facts that plausibly establish liability under federal law, the Court declines to exercise supplemental jurisdiction over Cook's state law claims at this

---

explained in this opinion, Cook may replead his FDCPA claims only as to the Greenberg Traurig e-mails.

[6] Cook, who is an attorney (though disbarred in 2014), is not the prototypical unsophisticated consumer, but the FDCPA standard is objective, not subjective, and applies regardless of the debtor's actual level of sophistication. *See Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000).

[7] The FDCPA's prohibitions apply only to "debt collectors." 15 U.S.C. § 1692e. A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The complaint contains no allegations as to the principal purpose of Greenberg Traurig, or the regularity with which it collects debts. As for HSBC, the Supreme Court recently concluded that the purchaser of a debt for its own account is not a "debt collector" with respect to that debt for FDCPA purposes. *Henson v. Santander Consumer USA Inc.* 137 S. Ct. 1718 (2017). The court cannot, however, on this basis dismiss counts 22 and 23 with prejudice as to HSBC because Cook's central claim is that HSBC never actually took ownership of his debt.

[8] Although the court is permitting Cook to replead certain FDCPA claims, it is not unreceptive to defendants' arguments that the court should abstain from evaluating them under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and its progeny. If Cook repleads such that the court must engage with the substance of his FDCPA claims, the court will consider any renewed argument that *Colorado River* abstention is warranted.

time. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). Although the complaint asserts that, in addition to federal question jurisdiction, this Court also has diversity jurisdiction over Cook's claim, that is not the case: Cook is an Illinois citizen, as, it appears anyway, are a number of defendants, including Greenberg Traurig.[9] Compl. at pg. 2. And "[a] failure of complete diversity, unlike the failure of some claims to meet the requisite amount in controversy, contaminates every claim in the action." *Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 564 (2005). Because complete diversity does not exist, the court lacks original jurisdiction over Cook's claims to the extent based on state law. The Court has jurisdiction over those claims only pursuant to its supplemental jurisdiction. 18 U.S.C. § 1367.

While Cook is permitted to replead certain counts, he is forewarned that he must do so with an eye on both efficiency and coherence. Cook's original complaint was an unwieldy 78 pages long, was unnecessarily duplicative, and contained lengthy and unnecessary screeds against various defendants. Rule 8 requires "a short plain statement of the claim"; the Court will not abide an amended complaint that is similarly prolix.

\*   \*   \*

For the foregoing reasons, the defendants' motions to dismiss are granted in part with prejudice and in part without prejudice. Cook's 42 U.S.C. § 1983 counts are dismissed with prejudice. With the exception of counts 22 and 23 of the complaint, Cook's FDCPA counts are

---

[9] A partnership is a citizen of every state in which its partners are domiciled. *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 316 (7th Cir. 1998). Although Cook has not pled facts sufficient to assess the citizenship of Greenberg Traurig (or any other party except HSBC), Greenberg Traurig has dozens of shareholders based in its Chicago office. *See* Greenberg Traurig Professionals, https://www.gtlaw.com/en/professionals? (last visited Mar. 16, 2018). Almost certainly, some of them are domiciled in Illinois.

also dismissed with prejudice. Counts 22 and 23 of the complaint, alleging FDCPA violations based on the 2016 Greenberg Traurig e-mails, are dismissed without prejudice. The court declines to exercise supplemental jurisdiction over Cook's state law counts but this ruling does not itself bar their reassertion in an amended complaint or in a different forum.

Dated: March 19, 2018

John J. Tharp, Jr.
United States District Judge